Good morning. May it please the Court, Charles Bonneau for Appellant and Petitioner, Michael Malone. The lifeblood of a criminal defense investigation is access to information. Information that will take the investigation to usable evidence or to help shape the defense strategy. The defense interest is by no means limited to the disclosure of admissible evidence on a silver platter. The question before the Court is whether this is something that the United States Supreme Court has already held. The District Court based its conclusion entirely on the perception that the United States Supreme Court did not categorically accept or reject the suggestion that inadmissible evidence can be material under Brady if it could have led to the discovery of admissible evidence. This conclusion was wrong. Under United States v. Bagley, the reviewing court on a Brady claim may consider any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. We've submitted a letter citation to a recent case from this circuit, Williams v. Ryan, holding that letters, which were somehow undiscovered in the district attorney's office until years later, which led to evidence and information which would have affected the defense strategy, that those letters were Brady material. They weren't necessarily admissible themselves, but they led to admissible evidence. I think if you read Bagley and then Williams v. Ryan, I think that this is a well-established rule that the district court and the State courts have ignored at their peril. But even if that's true, and I'm not saying that, you know, that issue is over or assumed, but let's assume for a moment that's true, in this case, this evidence is not something that, let's assume that it's not admissible, but it's not something which was favorable, you know, favorable to the accused in the sense that the evidence that was supplied. So you start out with what is it that the prosecutor was told. And the prosecutor was told that a witness for the defense was, I don't have the exact language in front of me, but he's a bad guy, he's a problem. And that's about all. And the prosecutor then follows up, right, makes a call, gets no response back. But what's said to the prosecutor doesn't lead to, I mean, that statement isn't something like somebody walking in and saying, I just talked to Bob Jones. Bob Jones told me he saw who shot the person. He doesn't want to talk, but if he's compelled to do so, he will. That's all hearsay. That's not admissible. And let's assume that that would lead to clearly admissible evidence if one followed up, or it might lead to admissible evidence. But this was not the hint, the information given to the prosecutor was simply some guy who testified for defense is a guy that is a bad dude, problem guy, something to that effect. Your Honor, we have a whole lot of people, dozens of people, witnesses in this case, that are all from Alabama and Mississippi and Louisiana. And this lady calls from, I believe from Alabama, and she says that she knows a defense witness, Orbus Weathers. That's enough to, that's the kind of lead that if I had that, I would for sure. That's Brady? You think that's Brady? That's, well, it's part of the Brady scenario. Is that Brady itself to say that Orbus Weathers, this is the quote, a defense witness is a bad guy and not to be trusted? Yes. That's Brady? That goes to the credibility of our witness, which we are relying on. Okay. Number one. Number two is it contains within it the potential for a great deal of other information. And what it turns out to lead to is that he's actually a suspect. Now, we've got four suspects in the case already, in addition to the defendant. So our hunt is on to find more. And if it turns out that our own witness is a prime suspect, that he may have shot the woman, that's where this is going. Well, but if I read, if I am understanding your argument, it would seem to me that the end result of your argument is any evidence, regardless of what the prosecutor gets, must be turned to the defense. Any tip that's ---- Any evidence. I mean, we're now talking about inadmissible evidence, and you're saying if it's inadmissible, it's got to be turned over. So in my view, the end result of your argument is any evidence must be turned over. This is right in line with this Court's ---- Is that what you're arguing? Yes. Well, where do I find that in Supreme Court precedent? Supreme Court precedent talks about materiality. It has to be some information. It may be very ambiguous. But if it's information that leads to evidence, then the United States Supreme Court says that it affects our case. It may mean that we call a witness. It may mean that we impeach a witness. It may mean that we don't call him at all. But it affects our case. That's what the United States Supreme Court has said. And this is the kind of tip that we're looking for. Now, this lady didn't want to ---- But just a minute. Back to the thing. What are we really looking at? It looks to me like we're trying to determine a standard of materiality. And I believe that what Bagley said was we're adopting the Strickland ---- Sure. And when we got through that, I didn't see anything in Bagley that said there is a clear federal law that inadmissible evidence must be disclosed. There's nothing in there to say. I agree with that 100 percent. Well, that's your argument. No, it's not. If it's inadmissible, it's got to be disclosed. No, it's not. Just say it's inadmissible, that could be the phone book. Everything is inadmissible. Well, I understand. We are ---- That's why I'm trying to get you to focus on materiality. We're talking about evidence that is material in the sense that it's not even admissible evidence, but it's information. Imagine that you were the defense attorney here, and you get ---- and it's your receptionist that gets the call. Orvis Weathers is a bad guy. This lady is calling from Alabama. This is my witness. He says he's got all kinds of ---- he's right around the circumstances of the offense. He sees a bloody truck cab being cleaned out. Now, somebody is going to call me from Alabama and say that this guy is not a bad ---- is not a good guy and he's not to be trusted? That's the kind of material lead that would come under Strickland. If you did not follow that up, you would be highly remiss. I think we don't think we'd have this problem. Bagley parallels Strickland. It's the same kind of question. Does this have enough of a red flag on it to turn it over? And the answer is yes. Bartholomew came out after Bagley. Beg your pardon? Bartholomew came out after Bagley. In fact, ten years later. Ten years later. And Bartholomew didn't talk about anything, about any adverse effect to a statement. Bartholomew got us back to the idea that it's got to have a materiality to it in order to have it be turned over. And what we're really looking at here is we've got inadmissible evidence. We've got ---- the statement itself would have been inadmissible. You mean that the phone message? Yes. Well, sure. Okay. And we have inadmissible evidence. We don't have anything else. And we're trying to figure out does the Supreme Court precedent suggest in that kind of a situation, given Bartholomew, it's not any adverse effect, it's is there materiality to inadmissible statements? And I guess I'm trying to figure out now how could this poor state court have gone so far as you're going? Based on Supreme Court precedent. Well, this poor state court had before it a lot of exonerating evidence. And the only question is whether this is a red flag enough to lead us to where we want to go and where we need to go. As you know, this Court has been severely chastised because we apply a direct review standard when we should be applying a 2254 standard. So I am now looking at the case as it is. And I want you to talk about what Supreme Court case, given Bartholomew, is going to get me there. There's absolutely no indication that Bartholomew meant to alter Bagley at all. Well, it didn't talk about any adverse effect. The only thing it had occasion to say is that if this goes down a blind alley where the witness that we are looking for is dead or an unqualified expert or it turns out to be polygraph evidence or something like that, if it's a blind alley, then it doesn't go anywhere. And we agree with that. This went quite a ways. And that's what the Court has to look at. This clue, this tip could have come in in any number of ways. I think you're jumping ahead. Even if you assume that inadmissible evidence can be Brady material, it still seems to me that you're now looking at the end product. Later on, you found out all these things. But the prosecutor, that's the vantage point, the information received by the prosecutor. What was that information and what was the obligation of the prosecutor to turn that over? I'll say one thing. It was important enough for him to return the phone call. Okay? So it wasn't just something that blew by him. He knew it was important. He tried to return the phone call, but he just didn't feel it was important enough to tell the defense. Now, that tells you that this is the kind of red flag. It may be a very – it's like the tip of the iceberg. It may be very small. But when it leads to admissible evidence that implicates another suspect in the murder where you only can get it, you know, at some point you've got too many other suspects to include the defendant alone. And this turned out to be crucial. Did the DA know that? I don't know, but he knew it was important. Thank you. Thank you, counsel. Good morning. May it please the Court. Justin Riley on behalf of the Warden. Not only is there no clearly established Supreme Court precedent that any evidence, whether or not the defense would like to have it or whether or not the evidence could lead to something more helpful, must be considered in a materiality review, the underpinnings of Brady reject such a broad formulation. The fact that evidence could lead somewhere takes away the adversarial system, as explained by the Supreme Court in United States v. Agers. In that case, in formulating the materiality review, they declined, specifically declined to focus materiality on the effect that the evidence might have on preparation of a defense, instead focusing on the effect on the verdict on impeachment, innocence, and guilt. Would you say that if someone called the prosecutor and told the prosecutor, did I just talk to someone who said they had talked to someone else who told them about a murder that they witnessed, and that person, ultimate person, the one who has the testimony, says, I don't want to be involved in this at all, but if a squeeze is put on me, I'll have to testify. That's the information the prosecutor gets. The prosecutor doesn't have to turn that over on the Brady. It's very specific. The person calls. This is not going to be the witness. It's not admissible. But they're giving information. I talked to X, who said he was there. He saw what went on. He doesn't want to be involved in this thing, but he doesn't play with cops. He will talk if he is required, something like that. You don't have to turn that over. I believe I understand your question, and if I can focus my answer just a little bit. If a State court on review applying Brady found that he didn't have to turn it over because inadmissible evidence was not material, then that decision would not be contrary to or an unreasonable application of clearly established Supreme Court precedent. Do you think if somebody said, my friend told me that I witnessed a murder by another person, even though it's inadmissible, that that's not Brady material? If it's completely inadmissible for any purpose? Yes. It's obviously a hearsay statement because my friend told me that this other person committed the murder. You don't think a prosecutor has to turn that over under Brady? Obviously, we don't have time to fully develop a hypothetical, but if that were inadmissible for any purpose? That comes up all the time. Well, it does come up all the time because you get a tip. If a State court decided that it was not material because it was inadmissible. We're going to take this one layer at a time. Okay. Because if it's not Brady material, we don't even need to get to the standard of review. I'm just asking you because I thought I heard you say you started off your argument about Brady. Do you really think that that wouldn't be Brady material? In Brady itself, they actually discussed admissibility of evidence and whether or not that has material. And they decided that because the evidence was not admissible for this particular purpose, it wouldn't be material. They wouldn't even consider it. So if a State court was interpreting Brady and found that inadmissible evidence was not material, that would not be an unreasonable application of Brady. Never. I'm not going to pass on what a prosecutor should actually do. No, I'm not going to pass on that. I'm focusing on what the State court could reasonably conclude. I don't think that really, if you look at the cases fairly, that it falls down on admissibility or inadmissibility. That's a component of materiality. Yes, I agree with you. So the fact, it just strikes me as odd to say that just because it's hearsay, because almost all of these tips are hearsay, in and of themselves are not admissible. But if it's calculated to lead to the development of material evidence, then it seems to me it's Brady material. I mean, take the letters in Williams. I mean, there's no indication there whether they're admissible or not. Yes, I don't disagree. To close out your hypothetical, it is my belief that a State court wouldn't find, because I think that admissibility does weigh into materiality. Sure. Just to continue on a slightly different note, though. Yes. Here we have a case, it's an interesting, where a tip could have later was shown to lead to what was obviously relevant evidence. But in and of itself, it just says this guy's a bad guy. Now, because that bears on the potential impeachment of a witness, does that then bear on whether or not it should have been disclosed under Brady, forgetting the subsequent consequences of where it led? I think such an attenuated analysis would, in writing the opinion, this court would basically constrain prosecutors to hand over their entire file to the defense. No, I think not. I think the question is whether or not. I mean, impeachment evidence is obviously Brady material, right? This isn't impeachment evidence, though. It's just I think this guy's bad news. I think this guy isn't to be trusted. He tried to call her back. Not that that weighs all that much into materiality. But if a prosecutor must consider where this might go down the road and all the permutations of what a piece of evidence or a piece of information might have, it does inevitably lead to, well, I'm just going to have to give my entire file to the defense. No, but we're not going that far in the terms of the analysis. We're just looking at this statement. It obviously led somewhere. And the question for me is, was the statement by itself, if it's considered impeachment, is that something that should have been turned over to the defense? If it was impeachment, for sure. The question is, I think we would both agree that if it's impeachment. And here it's an odd situation where it bears on the credibility of a defense witness, arguably. And that's inculpatory perhaps or rather than exculpatory. I mean, we draw the line there. But if it were a prosecution witness, wouldn't you agree that it's a lot closer to the line on Brady? You get closer if it's a prosecution witness. You get closer if the evidence is admissible, to be sure. And that all weighs in materiality, as we were discussing. We have none of those here, though. My colleague kind of stole my question for you, which is it seems to me there's no question that if you're going to have impeachment evidence or if there's a statement the prosecutor hears that will be an impeachment of their own witness, they should disclose it. Sure. And what about is there absolutely good law that if you see impeachment of the defense witness that you should disclose it? I don't believe – Bagley and Kiles, I think, they're directly on impeachment. I understand. I'm just trying to get your best idea because I looked at the cases. I don't think – they didn't squarely address and they did not clearly establish that the impeachment goes to all witnesses. I believe that the witnesses they were analyzing were prosecution witnesses. Well, I mean, this is the part of this case that nobody's really argued very heavily, but it seems to me that admissibility and what you're going to find thereafter is one argument, but impeachment is quite another, and I'm trying to figure out in this particular instance if the prosecutor deeming it to be possible impeachment, if he shouldn't have turned it over. Like I say, I don't read the United States Supreme Court cases as squarely addressing or clearly establishing that you must turn over impeachment. You're saying the state can say no. That's all you're saying. I'm saying that a state court in reviewing whether or not the prosecutor can say no would be acting objectively reasonable. I don't mean to be facetious, but I think there's a difference between what I think the prosecutor should do and what a state court can reasonably find the prosecutor to do. We understand that. Unless there are any other questions, I'd be willing to submit. Any further questions? No. Thank you. Thank you. We'll give you one minute for a muddle. Our questions took you over, but confine it to the minute if you can. Thank you very much, Your Honor. I actually wanted to come back to something that I think I misspoke because I think at one point I did say that this, her tip, the language of her tip was inadmissible. That's wrong. It is admissible. Under California law, we don't really distinguish between evidence and impeachment evidence. It's all evidence. Impeachment evidence is introduced for a limited purpose. And that's what this phone call would have been. It would have come into evidence. Well, it was impeachment over defense witness. So does that make a difference? Yes. Again, back to Bagley, Williams v. Ryan, it affects the, completely affects the strategy of the defense case. If for no other reason than the defense attorney ethically cannot put on a witness that he believes is lying, that's number one. But, you know, this is, of course, got much bigger dimensions than that. It may turn out that Weathers will take the stand, in spite of being advised of his Fifth Amendment privilege, and double down, as he did during the investigation, and say, I was in Florida. I wasn't even in California when this happened. And then we get into the weight logs and the possibility that he was manufacturing an alibi which would indicate that he was being untruthful about where he was and actually trying to cover up. But there's nothing in the statement which would suggest to the prosecutor, is there, that that's a possibility? I mean, there's nothing in the statement. That's what you're looking at, right? That would implicate him? Look, he's by his own statement, in his own testimony, which had been returned over to the prosecution by reciprocal discovery. He knew that Weathers was going to be an important witness for the defense. So if he's not telling the truth, you have to ask why. Why would he not tell the truth? Why would he not be truthful? Any further questions? Thank you, counsel. Thank you. Thank you both for your arguments. The case, as heard, will be submitted for decision.
judges: Oliver, Thomas, Smith